# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

LOMBERTO DIAZ, III,

        Plaintiff,

v.                          CASE No. 8:19-cv-1230-T-TGW

ANDREW SAUL,
Commissioner of Social Security,[1]

        Defendant.

_____

## O R D E R

The plaintiff in this case seeks judicial review of the denial of his claim for Social Security disability benefits.[2]  Because the decision of the Commissioner of Social Security is supported by substantial evidence and contains no reversible error, the decision will be affirmed.

### I.

The plaintiff, who was fifty-eight years old at the time of the administrative hearing and who has a high school education (Tr. 71), has

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 17, 2019, and should be substituted as the defendant. See Fed. R. Civ. P. 25(d).

[2] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 8).

worked as a police officer (Tr. 149). He filed a claim for Social Security disability benefits, alleging that he became disabled due to anxiety, depression, and post-traumatic stress disorder (PTSD) (Tr. 141). The plaintiff filed his claim for disability on March 7, 2013, with an alleged onset date of March 1, 2011 (Tr. 141). The claim was denied initially and upon reconsideration.

The plaintiff had two prior hearings before administrative law judges in January 2015 and March 2017 (Doc. 20, p. 3). Following both of those hearings, the Appeals Council granted review and remanded the case back to an administrative law judge for further proceedings (id.). The plaintiff, at his request, received a third de novo hearing before an administrative law judge on April 26, 2018 (id.).

The law judge found that the plaintiff had severe impairments of hearing loss, anxiety disorders, affective disorders, and post-traumatic stress disorder (PTSD) (Tr. 17). The law judge concluded that with those impairments the plaintiff had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations (Tr. 22–23):

2

Not more than a moderate noise intensity level, as the term "moderate" is defined in the Selected Characteristics of Occupations (SCO). Now, by reliance on this source, I mean to distinguish my definition of "moderate" from the term "moderate" as used by the State agency in its opinion on Reconsideration at Exhibit 3A. I intend the term "moderate" to be defined exclusively by the SCO, whereas the definition of "moderate" as used by the State Agency at Exhibit 3A, is different, is interpreted to mean a percentage of the workday at which the individual can be exposed to noise, and is rejected in this RFC. Not more than occasional exposure to workplace hazards, such as unprotected heights and moving machinery. Not more than occasional exposure to humidity or wetness. And then further, the work must be unskilled; SVP 1 or 2 jobs only. There shall be no work at production pace, defined to mean no work on an assembly line, and no work where he is paid by the piece produced. This is the exclusive definition for production pace, and is used to control for heightened anxiety that an employee may experience when on an assembly line or when his wage is driven by how much is produced; and to further distinguish between work at those levels, which is herein precluded, and any and all other measurements or definitions of normal, routine employer expectations on employee productivity, which is herein allowed. He can have no work related interaction with the general public. He is able to concentrate and persist in routine intervals of work, which means he retains the ability to work with routine, periodic breaks from work at mid-morning, mid-afternoon, and during the noon meal.

3

The law judge determined that with those limitations the plaintiff could not perform past relevant work (Tr. 28–29). However, based upon the testimony of a vocational expert, the law judge found that jobs existed in significant numbers in the national economy that the plaintiff could perform, such as warehouse worker, caretaker (property), and industrial cleaner (Tr. 29–30). Accordingly, the law judge decided that the plaintiff was not disabled (Tr. 30).

The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner (Tr. 1).

## II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3). In this case, the plaintiff must show that he became

4

disabled before his insured status expired on December 31, 2016, in order to receive disability benefits.   42 U.S.C. 423(c)(1); <u>Demandre</u> v. <u>Califano</u>, 591 F.2d 1088, 1090 (5th Cir. 1979).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence.   42 U.S.C. 405(g).   Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson</u> v. <u>Perales</u>, 402 U.S. 389, 401 (1971), <u>quoting</u> <u>Consolidated Edison Co.</u> v. <u>NLRB</u>, 305 U.S. 197, 229 (1938).   Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." <u>Adefemi</u> v. <u>Ashcroft</u>, 386 F.3d 1022, 1027 (11th Cir. 2004) (<u>en</u> <u>banc</u>).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.   <u>Grant</u> v. <u>Richardson</u>, 445 F.2d 656 (5th Cir. 1971).   Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported

5

by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

### III.

The relevant time period for this claim is the nearly six-year period between March 1, 2011 (the alleged disability onset date) and December 31, 2016 (the last date the plaintiff was insured for disability benefits). Thus, the plaintiff must identify evidence compelling the law judge to find that he became disabled during this time period.

The plaintiff raises two issues: (1) that the law judge erred in failing to give greater weight to the opinion of a treating and an examining physician versus a non-treating, non-examining physician, and (2) that the law judge's decision was tainted by a mischaracterization of the plaintiff's

testimony (Doc. 20, pp. 6–7, 11).    Both arguments are meritless. Moreover, in light of the Scheduling Order and Memorandum Requirements, a challenge to any other finding by the law judge is forfeited (Doc. 10, p. 2).

   A. Opinions from treating physicians are entitled to substantial or considerable weight unless good cause is shown to give it less weight.  Hargress v. Social Security Administration, Commissioner, 883 F.3d 1302, 1305 (11th Cir. 2018).  Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records.  Id.

   (1) The plaintiff questions the law judge's assessment of opinions from treating psychologist Lois O. Gonzalez, Ph.D., ARNP.  Dr. Gonzalez saw the plaintiff between January 2013 and November 2015 (Tr. 740, 1124).  In 2013, Dr. Gonzalez completed a Psychiatric/Psychological Impairment Questionnaire.  She opined that the plaintiff's symptoms included "irritability, easily provoked anger, intense anxiety, social inappropriateness, depression," and that the plaintiff was markedly limited in his ability to perform many tasks (see Tr. 742, 743–45).  And in a letter

7

dated November 20, 2015, Dr. Gonzalez expressed her opinion of the

plaintiff's functioning (Tr. 1124):

> Mr. Diaz has not expressed any issues in his level of intelligence and has shown that he can carry out chores and projects around his house, following appropriate instructions. However, it would not be possible at this time for Mr. Diaz to be put into a professional situation in which he would be asked to carry out workplace instructions.

> Although Mr. Diaz reports that his mood has improved somewhat with treatment, he continues to have trouble sleeping, has occasional nightmares, and reports irritability, episodes of anger, and mood swings. He is quite hypervigilant and mistrustful of people. His chronic depression, anxiety and PTSD render him permanently and totally unemployable. He could not perform a desk job, as this anxiety, depression (resulting in sick days), low frustration tolerance (with potential for impulsive outbursts of irritability which can escalate rapidly to anger or rage), and memory and attention problems (related to psychiatric conditions and medication side effects) would impair his ability to perform job duties, keep up with job demands, and handle the interpersonal requirements of employment.

The law judge acknowledged the plaintiff's individual treatment and group therapy treatment with Dr. Gonzalez but gave the opinions "little weight" (Tr. 27).[3]  The law judge explained:

> I give little weight to the psychiatric/psychological impairment questionnaire completed by Lois Gonzalez, Ph.D., ARNP in July 2013.  This treating source opined that the claimant is markedly limited in understanding and memory, sustained concentration and persistence, social interactions and adaptation.  Furthermore, this source opined that the claimant is easily provoked to anger and to avoid responding inappropriately, could withdraw and isolate.  She opined that the claimant is incapable of even "low stress" and that he is likely to be absent from work more than three times a month (5F).  Overall, minimal weight is given to these opinions they are grossly inconsistent with the medical evidence of record and this treating provider's own group therapy treatment notes.  For example, within the psychiatric/psychological impairment question-naire, this treating source reports the claimant's current GAF Score is 60 and that his prognosis is good (5F/1).  Additionally, this source's mental status examinations from January and April 2013 revealed that despite the claimant's mental impairments, the claimant was a [sic] oriented in all spheres, had grossly intact recent and remote memory, was cleanly groomed and ambulatory, his speech was moderately paced and logical, he

---

[3]The law judge had a different assessment of Dr. Gonzalez's opinion regarding the plaintiff's substance use.  She gave some weight to the opinion of that use and great weight to the opinion that substance use was not a severe impairment and not material to the issue of disability (Tr. 19).

> displayed no evidence of psychotic thought
> processes, and he had adequate judgment and fair
> insight. Notably, the claimant denied suicidal or
> homicidal thoughts and had no cognitive
> impairment noted (2F/19, 21-22 and 3F/7).
> Furthermore, the psych/mental status examina-
> tions from June and September 2012 revealed that
> the claimant had normal mood/affect and memory
> and progress notes indicated that the claimant's
> impairment-related symptoms were controlled
> with medication (lF/1-2).

(Tr. 27).  Regarding Dr. Gonzalez's letter from 2015, the law judge stated

(Tr. 27–28):

> Likewise, I give little weight to the opinion letter
> submitted by Lois Gonzalez, Ph.D., ARNP, in
> November 2015.  Overall, this treating source
> opined that due to the claimant's mental
> impairments, he is permanently and totally
> unemployable (20F).  First, the issue of disability
> is an issue reserved for the Commission; thus, this
> opinion has no value.  Next, little weight is given
> to this opinion because it is not supported by the
> medical evidence of record.  For example, this
> treating source reports that the claimant attends
> h[is] group sessions regularly.  Those progress
> notes indicate that the claimant was in no acute
> distress and that he benefited from attending group
> therapy sessions where he shared his difficulties
> and concerns, was an active member in
> participation and completed assigned homework
> (13F/4-50)  In fact, but for a two-week lapse in
> weekly cognitive behavior group therapy, the
> claimant showed regularly, contributed, was
> observed to take something positive from each

10

> session, completed the homework (some of the subject matter being highly abstract (e.g., mindfulness), with skills not readily learned/ingrained without significant "practice"). These groups varied in size and group membership, ostensibly making it more difficult to share and contribute among strangers. Also noteworthy is that when his mother passed unexpectedly and he suspected medical malpractice, he asked for individual sessions. During those visits, and under those stressful conditions, he was still reasoning well, had good insight and judgment, and was not "acting out," demonstrating significant adaptation skills and no evidence of low frustration tolerance as suggested. (14F)

The law judge's reasons for discounting Dr. Gonzalez's opinions are cogent and more than adequate. Moreover, there is additional evidence in the record supporting the law judge's findings.

Thus, on October 28, 2016, which was little more than two months before the plaintiff's insured status expired, Dr. Gonzalez saw the plaintiff individually for thirty minutes. Her notes of that session stated (Tr. 977–78):

> Current Condition: Patient presents stating that he is doing well. He states that he sometimes has anger triggered but it only lasts a few seconds and he is able to control being out of control. He states that he is not drinking, admits to occasional marijuana use which prevents him from drinking.

11

> States that he feels the buspirone is helping a great
> deal with his anxiety and he very rarly [sic] has to
> take a prn alprazolam. He states that his wife and
> daughter are now in therapy and the household is
> much more pleasant. He denies mood swings,
> denies impulsive or aggressive actions, and denies
> suicidal or homicidal ideation.
>
>       ...
>
> Mental Status Exam:
> a) appearance: Cleanly groomed; ambulatory.
> b) speech: Clear, moderately paced, and logical.
> c) mood/affect: Mood euthymic; affect full range
> d) content of thought: No evidence of psychotic
> thought processes. Denied hallucinations. Denied
> suicidal or homicidal thoughts.
> e) judgment/insight: Judgment adequate; insight
> fair.
> f) cognitive: Alert; Oriented in all spheres; recent
> and remote memory grossly intact. No cognitive
> impairment noted at this time.

Moreover, on December 2, 2016, less than a month before the

plaintiff's insured status expired, Dr. Gonzalez's notes of a group therapy

session the plaintiff attended were unremarkable. Dr. Gonzalez stated that

the plaintiff "was an active member"; "Acute stress was not noted or

reported"; "Patient was attentive in group"; and "The patient seemed to have

benefited from attending the session" (Tr. 958). These observations do not

reflect the behavior of a disabled individual.

In sum, the law judge reasonably explained why she was discounting Dr. Gonzalez's opinions regarding the plaintiff's mental status. And her findings are clearly supported by substantial evidence.

Significantly, the plaintiff made no attempt to challenge the law judge's reasoning. Rather, his argument was essentially limited to a recitation of Dr. Gonzalez's comments and opinions (Doc. 20, pp. 8–9). However, the law judge discounted those statements. The plaintiff has not articulated any basis for concluding that the law judge's reasons were erroneous.

(2)   The plaintiff also complains about the assessment of an opinion by Benjamin N. Cohen, Ph.D., P.A. In February 2017, Dr. Cohen examined the plaintiff at the request of the plaintiff's legal representative (Tr. 1027). In the Psychological Evaluation, Dr. Cohen observed the following about the plaintiff's current psychological symptoms:

> Current depressive symptoms include memory problems, irritable mood, temper outbursts, sad mood, anhedonia, decreased libido, hypersomnia, difficulty making decisions, hopelessness, passive thoughts of death, crying episodes, decreased socialization, poor concentration/attention, decreased energy/motivation, decreased libido, social isolation, and guilt. He has bouts of severe depression when he does not maintain his hygiene

13

> for 2 to 3 consecutive days. He also reports
> nervousness, avoidant behavior, hypervigilance,
> flashbacks, exaggerated startle reflex, and has
> intrusive memories. He denies a history of
> psychotic or manic episodes.

(Tr. 1029). Regarding the plaintiff's mental status, Dr. Cohen observed:

> Mr. Diaz arrived on time for his appointment. He
> drove himself to the appointment and arrived
> alone. He was cooperative and seemed to give
> very honest and candid responses. Hygiene and
> grooming were very good. ... He exhibited an
> appropriate degree of professional respect toward
> the evaluator. Mood was anxious and affect was
> congruent, marked by psychomotor agitation. ...
> Attention span and concentration were average.

(Id.). Dr. Cohen also completed a Mental Impairment Questionnaire in

which he noted that the plaintiff's most frequent and/or severe symptoms

were sad/irritable mood, social isolation, and flashbacks (Tr. 1035). Dr.

Cohen also noted marked limitations in the plaintiff's ability to complete a

workday without interruptions from psychological symptoms, to perform at

a consistent pace without rest periods of unreasonable length or frequency,

and to interact appropriately with the public (Tr. 1036).

The law judge acknowledged the plaintiff's evaluation by Dr.

Cohen but also gave it little weight (Tr. 28). The law judge explained:

14

I give little weight to the psychology consultative evaluation completed by Dr. Cohen, Ph.D. in February 2017. This consultative evaluator opined that the claimant's mental impairments would likely cause no impairment in his ability to perform work-related mental activities (i.e., concentration and memory) and moderate to severe impairment in his ability to socialize and adapt at work. Little weight is also given to the mental impairment questionnaire completed in February 2017. This same consultative evaluator opined that the claimant has none to mild limitation in understanding and memory, moderate to marked limitation in adaptation and marked limitation in concentration and persistence, as well as social interactions. Overall, little weight is given to these opinions because they are inconsistent with the medical evidence of record, which shows that outside of dysphoric mood and/or tearful affect at times, the claimant's mental status examinations revealed that he was attentive, had normal speech and appropriate behavior with adequate judgment. Additionally, the medical evidence of record further shows that the claimant was able to attend and benefit from group therapy sessions without incident and with no acute distress noted.

(Id.) (internal citations omitted).

Accordingly, the law judge adequately and reasonably discounted the opinions of Dr. Cohen. Notably, since Dr. Cohen only examined the plaintiff once (and after the expiration of the insured status at

15

that), his opinion is not entitled to the same consideration given to a treating physician.

Again, as with Dr. Gonzalez, the plaintiff makes no attempt to show that the reasons given by the law judge were flawed. Rather, all he does is set forth Dr. Cohen's observations and opinions (Tr. 9–10). Consequently, there is no basis for concluding that the law judge erred in her evaluation of Dr. Cohen's information.

The closest the plaintiff comes to an argument on this issue is his statement that "[a]t a minimum, the Administrative Law Judge should have acknowledged that the opinion of a treating and examining physician is generally entitled to more weight than the opinion of a non-treating non-examining physician" (Doc. 20, p. 10). The law judge, however, expressly stated that "I have also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527" (Tr. 23). That regulation sets out the principles governing the weighing of medical opinions. In light of the law judge's statement, the law judge clearly understood, and applied, those principles.

Having reasonably discounted the opinions of Dr. Gonzalez and Dr. Cohen, the law judge was entitled to give greater weight to the opinions

16

of the non-examining reviewing psychologists, Judith E. Meyers, Psy.D., and Todd Giardina, Ph.D. The law judge set forth adequate and reasonable grounds for giving those opinions great weight (Tr. 27). Significantly, those opinions took into consideration the reports from Dr. Gonzalez of January and April 2013 (Tr. 144, 158).

B.    The second issue the plaintiff raises is that the law judge's decision was tainted due to the law judge's mischaracterization of the plaintiff's testimony. At the hearing, the law judge asked the plaintiff questions about his wife and son during the time period in which the plaintiff was not working. The hearing transcript reflects the following exchange:

> Q:   And where did your wife work when she wanted you to go back to work?
> A:   My wife worked – she's the manager of a dental office.
> Q:   Okay. And at that time when you had one child living at home, he or she?
> A:   It would've been my son.
> Q:   In high school?
> A:   Yeah, he was – he was in high school. He went to Blake, and he's a sergeant now in the Army. He flies drones.
>
> . . .
>
> Q:   All right. So, when you were – what other thing – I mean, because that's what I'm getting at. Did he have any other extracurricular activities where you would go?

17

> A: He would go to a roller skate rink, he did that
> baseball, you know, the things the – the smaller
> kids do.  We took him to all that.  When he got
> older, he rode dirt bikes.  I got – we got him a dirt
> bike, and that way me and him could go out
> somewhere on our own and – and he would do
> that.  I'd load it up on – on my truck.
> Q: Okay, so he graduated from high school?
> A: Yes, he did.

(Tr. 62–64).  The law judge included the plaintiff's testimony about the

activities he used to do with his son in the decision, stating (Tr. 23):

> At the hearing, the claimant testified that he is
> married and lives at home with his wife.  During
> the period at issue, which is from March 1, 2011,
> the alleged onset date, to December 31, 2016, the
> expired date last insured, the claimant testified that
> his teenage son lived within the household.  He
> would attend his son's baseball games, dirt bike
> with his son and he attended his son's graduation.

The plaintiff avers that those activities were done prior to the

alleged onset date, and that the law judge's "misunderstanding and

mischaracterization of the testimony" tainted her overall evaluation of the

plaintiff's testimony (Doc. 20, p. 12).  Further, the plaintiff argues that this

was not harmless error, as these purported activities "appeared to be a

significant reason" the law judge discredited the plaintiff's testimony (id.).

18

The plaintiff's contention fails.  In this issue, the plaintiff is essentially challenging the law judge's assessment of the plaintiff's subjective complaints in light of activities of daily living.  It is well-established that the responsibility for considering a claimant's symptoms is reposed in the Commissioner, and his determination is entitled to deference. Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005).  Consequently, to overturn the Commissioner's finding, the plaintiff must demonstrate that the evidence compels the contrary finding.  Adefemi v. Ashcroft, supra, 386 F.3d at 1027.  The plaintiff's criticisms of the law judge's assessment do not amount to such a showing.

The law judge properly explained her assessment of the plaintiff's alleged symptoms (Tr. 24):

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent mainly because

19

> the medical evidence of record showed that during
> the period at issue, the claimant's impairments
> responded well to conservative modalities.

First, contrary to the plaintiff's argument, it is not evident from the hearing transcript and the law judge's decision that the law judge misunderstood the plaintiff's testimony. Thus, the plaintiff has not cited to any record evidence that showed the law judge incorrectly set forth the hearing testimony, as the plaintiff was required to do by the Scheduling Order and Memorandum Requirements. Second, even if the law judge thought the plaintiff's activities with his son related to the relevant time period and she was mistaken, that misunderstanding does not appear to have influenced the credibility determination and thus the RFC assessment.

The law judge adequately explained why she discredited the plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms. The law judge found the plaintiff's subjective complaints were "inconsistent *mainly because the medical evidence* of record showed that during the period at issue, the claimant's impairments responded well to conservative modalities" (Tr. 24) (emphasis added). Thus, the law judge relied mainly on the medical evidence—not the plaintiff's activities of daily living—in assessing the plaintiff's limitations and formulating the RFC.

Indeed, the single sentence picked out by the plaintiff from the law judge's summary of the hearing testimony does not appear to have had any influence on the law judge's decision.

For these reasons, the plaintiff's challenges to the law judge's evaluation of the medical evidence and the law judge's characterization of the plaintiff's testimony are unavailing.

It is, therefore, upon consideration,

ORDERED:

That the decision of the Commissioner of Social Security is **AFFIRMED**.   The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 26th day of August 2020.

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE